UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUDY LOCKE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2648 |
| | § | |
| ETHICON INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

This negligence and products liability action, originally filed in Texas state court, comes before the Court after being removed by the defendants, Johnson & Johnson and Ethicon, Inc. The defendants now challenge the exercise of personal jurisdiction over them in connection with claims brought by 76 out-of-state plaintiffs joined in this matter (Docket Entry No. 3). The plaintiffs, on the other hand, move to remand the case to state court (Docket Entry No. 11). The parties timely filed their respective responses to these motions (Docket Entry Nos. 12, 21, 24), which are now ripe for adjudication. After considering their submissions, the record and the applicable law, the Court determines that the defendants' motion to dismiss should be GRANTED and the plaintiffs' motion to remand should be DENIED. With the exception of claims brought by plaintiff Judy Locke, a Texas resident injured in Texas, the plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.

**II.   FACTUAL BACKGROUND, PROCEDURAL HISTORY AND PARTIES' CONTENTIONS**

The defendants are New Jersey corporations principally located in New Jersey. They are the alleged manufacturers of GYNECARE PROLIFT® Pelvic Floor Repair System, a

transvaginal mesh device implanted in women for the treatment of pelvic organ prolapse and stress urinary incontinence.  Between 2005 and 2012, seventy-three women received implants with this device and subsequently experienced serious adverse side effects as a result of alleged product defects.  On or about July 18, 2014, these women and four of their husbands—collectively, residents from 14 different states—brought suit against the defendants in Texas state court for damages arising from the defendants' mesh implants.  The plaintiffs asserted causes of action under state law for negligence, strict liability (design defect, manufacturing defect, and failure to warn), and loss of consortium against both defendants, with no defendant specifically included or excluded from any claim.  Of the 77 plaintiffs who filed suit, Judy Locke is the only Texas resident and the only plaintiff to allege injuries arising from a mesh implantation in Texas.[1]

The defendants timely removed the matter to this Court based on federal diversity jurisdiction.  In their application, they disputed the state court joinder of Donna Miller, a New Jersey resident who they contend the plaintiffs improperly joined to defeat diversity.[2]  The parties have since filed dueling motions challenging the jurisdiction of this Court.  The defendants move to dismiss the claims of the out-of-state plaintiffs because those plaintiffs do not allege injuries in Texas to trigger the specific jurisdiction of the Court.  Additionally, they claim that as New Jersey corporations headquartered in New Jersey, they are not "at home" in Texas within the meaning of *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), to justify the exercise of general jurisdiction.

---

[1] The 76 other plaintiffs come from New Jersey, North Carolina, South Carolina, Wisconsin, Mississippi, Massachusetts, New York, Washington, South Dakota, Arkansas, Connecticut, Maryland and Arizona.

[2] The Court previously denied the defendants' motion to sever claims brought by this plaintiff (Docket Entry No. 18).

The plaintiffs contend that the defendants' position is based on a "rigid, overly-simplistic interpretation of *Daimler AG*." The defendants, they propose, are "at home" in Texas because they carry out the following activities: they derive significant revenue from their mesh sales in Texas; they hire and train Texas-based sales representatives and division managers that market and sell their products in Texas; they pay a Texas-based consultant to train physicians on the use of their products in Texas; and they maintain websites to market mesh products to all states, including Texas. Otherwise, the plaintiffs counter the defendants' jurisdictional challenge with a motion to remand wherein they urge the Court to resolve the issue of subject matter jurisdiction first. In it they claim that complete diversity is lacking because New Jersey litigants appear on both sides of the proverbial "v."

## III. STANDARD OF REVIEW

Preliminarily, the Court notes that the two motions present the Court with a procedural dilemma. If the Court addresses the question of subject matter jurisdiction first, then Ms. Miller's New Jersey citizenship destroys diversity, thereby justifying remand for the Texas state court to resolve the personal jurisdiction issue. Alternatively, if the Court addresses the question of personal jurisdiction first and finds for the defendants, dismissal would simultaneously reduce the number of plaintiffs to one and permit the Court to retain jurisdiction over the case. It is well settled that a district court has discretion to dispose of jurisdictional questions in a manner that promotes judicial economy. *E.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586-87 (1999) (upholding district court's decision to dispose of personal jurisdiction first); *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2010) (same). Here,

because resolution of the personal jurisdiction question leads to a more efficient result without offending principles of federalism, the Court will address personal jurisdiction first. *Id.*[3]

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant. *See* FED R. CIV. P. 12(b)(2). On such a motion, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006)). Where a court rules on such a motion without a hearing, however, the court must accept, as true, all uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor. *Id*. (citing *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002)). Thus, absent a hearing, the plaintiff need only establish a prima facie case for personal jurisdiction. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Nevertheless, after the plaintiff establishes its prima facie case, the burden then shifts to the non-resident defendant to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

Generally, in a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if two conditions are met: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment of the United States Constitution. *Revell*, 317 F.3d at 469. This Court, however, need only consider whether the exercise of jurisdiction over the non-resident defendant comports with due process "because the

---

[3] When, as here, "removal is nonfrivolous and personal jurisdiction turns on federal constitutional issues, 'federal intrusion into state courts' authority ... is minimized.' " *Ruhrgas*, 526 U.S. at 586-87 (quoting *Asociacion Nacional de Pescadores v. Dow Quimica,* 988 F.2d 559, 566–67 (5th Cir. 1993)).

Texas Supreme Court has [long] established that the Texas long-arm statute . . . 'reaches as far as the federal constitutional requirements of due process will permit.' " *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (quoting *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex. 1985)); *accord Revell*, 317 F.3d at 469-70.

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over [the] defendant does not offend 'traditional notions of fair play and substantial justice.' " *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)); *accord Daimler*, 134 S. Ct. at 754; *Monkton*, 768 F.3d at 431. Both portions of this test must be satisfied before the Court can exercise personal jurisdiction over the defendants. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

There are two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler*, 134 S. Ct. at 754; *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). Specific jurisdiction over a non-resident defendant arises when the non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View,* 205 F.3d at 215 (quoting *Burger King,* 471 U.S. at 472) (internal quotation marks omitted). General jurisdiction, on the other hand, arises when the defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."

*Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)); *see Monkton*, 768 F.3d at 432.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"—typically, "the place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear,* 131 S. Ct. at 2853-54); *Monkton*, 768 F.3d at 432. A corporation is *not* "at home" in "every state in which it 'engages in a substantial, continuous, and systematic course of business.' " *Daimler*, 134 S. Ct. at 760-61. "Otherwise, 'at home' would be synonymous with 'doing business' tests" implicating the exercise of specific jurisdiction. *Id.* at 762 n.20. The test for determining general jurisdiction over a foreign corporation is "whether that corporation's affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home in the . . . State." *Id.* at 761. In other words, the test is "not [simply] whether [the] corporation's in-forum contacts can be said to be in some sense 'continuous and systematic.' " *Id.* It is the exceptional case that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). Based on these principles, the Fifth Circuit has observed that "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton*, 768 F.3d at 432.

IV. **ANALYSIS AND DISCUSSION**

The exercise of general jurisdiction over the defendants turns on the sufficiency of their affiliations with Texas. Here, neither defendant's affiliations with Texas are sufficient because

neither is incorporated in Texas and neither defendant maintains its principal corporate office there. There is no dispute that the defendants are New Jersey corporations who are physically headquartered in New Jersey. The defendants are therefore "at home" in New Jersey and not in Texas. *Daimler*, 134 S. Ct. at 760; *Monkton*, 768 F.3d at 432.

To support their claim of general jurisdiction, the plaintiffs point to several operations carried on by the defendants to make them "at home" in Texas. They first cite to the $18,697,674 the companies earned from mesh product sales in Texas between 2004 and 2013, compared to the $10,464,887 earned from New Jersey sales during the same period. They contend that the substantial revenue earned from Texas sales render the defendants amenable to suit there. The argument resembles the very stream-of-commerce theory of general jurisdiction rejected by the Supreme Court in *Goodyear* and *Daimler*. In both cases the argument was made that the exercise of general jurisdiction is proper in every state where a defendant engages in a substantial, continuous and systematic course of business.

In *Goodyear*, The Good Year Tire and Rubber Company ("Goodyear"), an Ohio corporation, and several of its foreign subsidiaries were named as defendants in a wrongful-death lawsuit. The suit arose from a bus accident outside Paris that killed two boys from North Carolina. As administrators of the boys' estates, the boys' parents sued the defendants in North Carolina state court, where they predicated their claims on the allegation that the bus's tire was defectively manufactured. Although a small percentage of tires manufactured by Goodyear's subsidiaries were distributed in North Carolina, the subsidiaries otherwise lacked any affiliation with North Carolina. The North Carolina Court of Appeals held the subsidiaries amenable to suit in North Carolina on the grounds that the defendants "placed their tires 'in the stream of interstate commerce without any limitation on the extent to which those tires could be sold in

North Carolina.' " *Goodyear*, 131 S. Ct. at 2852 (quoting *Brown v. Meter*, 681 S.E.2d 382, 394 (N.C. Ct. App. 2009)).

The Supreme Court reversed the North Carolina court, finding the court's stream-of-commerce analysis "elided the essential difference between case-specific and all-purpose (general) jurisdiction." *Id*. at 2855. The Court explained that while the flow of the defendants' tires into the forum "may bolster an affiliation germane to *specific* jurisdiction," such contact does not "warrant a determination that . . . the forum has *general* jurisdiction over a defendant." *Id*. The Court anchored this rationale in its "canonical" holding in *Int'l Shoe*: "A corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' " *Id.* at 2856 (quoting *Int'l Shoe*, 326 U.S. at 318).

Similarly, in *Daimler*, the Court was unwilling to sustain the exercise of general jurisdiction where a foreign corporation's in-forum contacts may be "in some sense 'continuous and systematic.' " *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). In that case, the foreign plaintiffs sought damages from DaimlerChrysler Aktiengesellschaft ("Daimler"), a German public stock company headquartered in Stuttgart, for alleged human-rights violations in Argentina. Jurisdiction over the lawsuit was predicated on the California contacts of Daimler's subsidiary, a Delaware corporation headquartered in New Jersey with multiple California-based facilities, including a regional office, a Vehicle Preparation Center and a Classic Center. The subsidiary distributed Daimler's vehicles to independent dealerships throughout the United States, including California. The subsidiary's California sales accounted for 2.4% of Daimler's worldwide Mercedes-Benz sales.

Notwithstanding these arguably significant affiliations with California, the Court declined the invitation to hold Daimler subject to suit in California because neither it nor its subsidiary was incorporated in California, nor did either entity have its principal business office there. *Id.* at 752, 760-62. The Court expressed concern that "[i]f Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [its subsidiary's] sales are sizable." *Id.* at 761. The Court rejected "[s]uch exorbitant exercises of all-purpose jurisdiction." *Id.* at 761-62.

The plaintiffs' substantial revenue argument cannot withstand the holding in *Daimler*. Moreover, they have not substantiated their claim that the defendants' Texas sales, based on any meaningful comparisons, are *so* sizable to render them at home in Texas. *Cf. id.* at 761 n.19 ("We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." (internal citation omitted)). Fatally, the plaintiffs limit their product sales analysis to Texas and New Jersey without "apprais[ing] [the defendants'] activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20. On such a meager record, this case presents no occasion to recognize an exception to *Goodyear*'s exemplar bases for general jurisdiction. *See id.* at 761 n.19.

Next, the plaintiffs rely on the defendants' use of Texas-based sales representatives, division managers, and a consultant to train physicians on how to use their products and to market and sell their products in Texas. In *Daimler*, the Supreme Court had the opportunity to create an exception based on the service and sales support to customers provided by the

defendant's subsidiary throughout the forum State. The Court created no such exception, and neither does this Court under the facts of this case.

Finally, the plaintiffs point to the defendants' contact with Texas through websites designed to market their mesh products nationwide. In *Monkton*, the Fifth Circuit addressed a similar claim brought by a third-party complaint, a Texas resident, against third-party defendant Butterfield Bank (Cayman) Limited ("Butterfield"), a Cayman-organized bank located on the island of Grand Cayman. The in-state third-party plaintiff sought to establish general jurisdiction over Butterfield in a Texas federal district court based on the bank's website contacts with Texas, among other contacts. The Fifth Circuit acknowledged its historical reliance on the sliding scale test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine "whether the operation of an internet site can support the minimum contacts necessary for the exercise of personal jurisdiction." *Monkton*, 768 F.3d at 432; *Revell*, 317 F.3d at 470.[4] Under that scale, the court has explained,

> [a] 'passive' website, one that merely allows the owner to post information on the internet, is at one end of the scale. It will not be sufficient to establish personal jurisdiction. At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper. In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors. Here, we find more familiar terrain, requiring that we examine the extent of the interactivity and nature of the forum contacts.

*Revell*, 317 F.3d at 470 (footnotes omitted). The court further acknowledged its pre-*Daimler* cautionary observation that even this framework

> [i]s not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial continuous and systematic contacts required for a finding of

---

[4] The court in *Zippo* held that where, on an interactive website, "a user can exchange information with the host computer[,] . . . the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, 952 F. Supp. at 1124.

general jurisdiction—in other words, while it may be doing business with Texas, it is not doing business in Texas.

*Monkton*, 768 F.3d at 432 (quoting *Revell*, 317 F.3d at 471).

Based on this observation, the Fifth Circuit found that Butterfield's website "at most" demonstrated that Butterfield conducted business *with* Texas, not *in* Texas. *Id.* The court made this determination based on the parties' submissions and not on an independent review of Butterfield's website. *Id.* at 431-32 & n.1. In any event, the court held, the exercise of general jurisdiction was not proper because Butterfield's status as a foreign corporation did not meet *Daimler*'s paradigm test: it was neither incorporated in Texas nor was its principal office located there. *Id.* at 432. Ultimately, the court was unable to identify any pleaded facts to show that Butterfield's contacts with Texas were so continuous and systematic to render it "at home" in Texas. *Id.*

Here, like *Monkton*, the plaintiffs have not established personal jurisdiction over the defendants by pleading cognizable facts about the companies' incorporation or business headquarters, nor have they substantiated their claim that the defendants' websites constitute an exception to the general jurisdiction paradigms. In an attempt to show the defendants' nationwide presence, the plaintiffs cite a two-page document that they attached as an exhibit to their dismissal opposition and appears to be a page from Ethicon, Inc.'s website. The page is entitled "gynecology solutions" and predominately advertises the defendants' GYNECARE TVT™ ("transvaginal tape") product in the form of two charts: one chart lists the benefits of the defendants' device and the other compares the textile properties of the device with those of other mesh brands. The second page of the printout states that the contents of the site are "published for . . . healthcare professionals only," without reference to any targeted State or region.

Other than these marketing features, the webpage printout does not, on its face, appear to possess the kind of repeated online contacts with Texas residents to establish jurisdiction there, nor does it contain any "interactive elements" inferable by the Court as bases for "bilateral information exchange with [the defendants' website] visitors." *Revell*, 317 F.3d at 470. Without this showing, the plaintiffs' assertion of jurisdiction cannot meet *Zippo*'s sliding scale. Alternatively and irrespective of the sliding scale, as noted earlier the question of general jurisdiction is easily resolved under *Daimler*'s limiting and "[s]imple jurisdictional rule[]" that, barring exceptional circumstances, a corporate defendant subjects itself to suit only in the State of incorporation and where its principal business office is located. *Daimler*, 134 S. Ct. at 760 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)).

On the record before the Court, Texas is simply not a forum in which it would be permissible to subject the defendants to general jurisdiction. The defendants' operations in Texas are not so substantial and of such nature as to render them at home in the State. Because the out-of-state plaintiffs cannot meet their burden of establishing personal jurisdiction over these New Jersey defendants, dismissal of their claims is proper.

The claims that remain are those brought by Ms. Locke, a Texas resident and the sole plaintiff claiming injury in Texas. With respect to these claims, the defendants concede that specific jurisdiction exists to render them amendable to suit in Texas. They also concede that the Court has subject matter jurisdiction over Ms. Locke's claims on the basis of federal diversity. Because the Court has jurisdiction over the remaining parties and claims, the plaintiffs' motion to remand is DENIED.

V.  CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motion to dismiss is GRANTED and the plaintiffs' motion to remand is DENIED.

It is so **ORDERED**.

SIGNED on this 10th day of November, 2014.

_____
Kenneth M. Hoyt
United States District Judge